UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SUN SECURED FINANCING LLC *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-2162 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 11, 21 |
| | : | | |
| ARCS COMMERCIAL MORTGAGE CO. LP *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

DENYING THE DEFENDANTS' MOTION TO DISMISS;
DENYING THE PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY

## I. INTRODUCTION

Plaintiff Sun Communities, Inc. ("Sun Communities") is the owner and operator of a number of manufactured housing communities scattered throughout the United States. Together with six of its subsidiaries, it has brought suit against defendants ARCS Commercial Mortgage Company LP ("ARCS") and PNC ARCS LLC ("PNC ARCS"), businesses involved in the mortgage industry, and the Federal National Mortgage Association ("Fannie Mae"), a federally chartered mortgage financing corporation based in the District of Columbia.

The dispute centers on a $390 million financing agreement between the plaintiffs and ARCS, which later assigned its rights under the agreement to Fannie Mae. The plaintiffs allege that in 2009, the defendants impermissibly increased one of the fees called for in the agreement. Through this action, they seek to recover their excess fee payments and to obtain a declaratory judgment that the fee increase was impermissible under the terms of the agreement. The matter is now before the court on the defendants' motion to dismiss for failure to state a claim. Because

the court concludes that the allegations in the complaint set forth a plausible claim for relief, the court denies the defendants' motion.[1]

## II. FACTUAL & PROCEDURAL BACKGROUND[2]

In May 2002, the plaintiffs[3] and ARCS[4] entered into a financing agreement under which ARCS agreed to lend more than $150 million to the plaintiffs through a combination of fixed and variable interest rate loan facilities. Compl. ¶¶ 22-23. Funds disbursed under the fixed interest rate facility were termed "Fixed Advances" while funds disbursed pursuant to the variable interest rate facility were referred to as "Variable Advances." *Id.* ¶ 29. In April 2004, the borrowers and ARCS executed an amended agreement, increasing the total amount of financing available to the plaintiff to $390 million. *Id.* ¶ 25.

The parties entered into the amended agreement with the understanding that ARCS was essentially an intermediary and that many of its rights under the agreement would be assigned to

---

[1] The plaintiffs moved for leave to file a sur-reply to the defendants' motion. *See generally* Pls.' Mot. for Leave to File Sur-Reply Brief. The court concludes that the issues were fully briefed in the original motion, opposition and reply, and that the proposed sur-reply merely rehashes arguments already made in the plaintiffs' opposition. *See generally id.*, Ex. 1. Accordingly, the court denies the plaintiffs' motion for leave to file a sur-reply. *See Winston & Strawn LLP v. Fed. Deposit Ins. Corp.*, 2007 WL 2059769, at *5 n.3 (D.D.C. July 13, 2007) (denying a motion for leave to file a sur-reply because the proposed sur-reply merely "quibble[d] with particular statements" in the reply).

[2] Because this matter is before the court on a motion to dismiss pursuant to Rule 12(b)(6), the court treats all of the plaintiffs' factual allegations as true for purposes of the present motion. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

[3] The financing agreement was entered into by ARCS and Sun Communities' six subsidiaries. Although Sun Communities was not itself a party to the agreement, the plaintiffs allege that it was an intended third-party beneficiary. *See* Compl. ¶ 13.

[4] The defendants note that in July 2007, the assets of ARCS were transferred to PNC ARCS and ARCS was dissolved as a legal entity. Defs.' Mot. at 4. Accordingly, after the transfer of ARCS's assets, PNC ARCS stepped into the role previously occupied by ARCS under the amended agreement. *See id.*

Fannie Mae. *Id.* ¶ 26. Specifically, each time ARCS would disburse an Advance to the plaintiffs, ARCS would assign its rights to repayment to Fannie Mae. *Id.* ¶ 26. Following such an assignment, Fannie Mae would convert the loan into a mortgage-backed security ("MBS"), a negotiable financial instrument backed by the loan. *Id.*, Ex. A ("Am. Agreement") § 13.01. Fannie Mae would then provide the MBS to ARCS as consideration for the assignment of its repayment rights to the underlying loan. *Id.* ARCS, in turn, would sell the MBS to investors. *Id.* § 2.01(c).

In exchange for the financing, the plaintiffs agreed to pay not only interest on the loans, which ultimately went to the buyer of the MBS rather than to the defendants, *id.*, but also a "facility fee" which compensated the defendants for the cost of securitizing and servicing the loans, *id.* § 1.04(b)(ii). The facility fee for Variable Advances, termed the "Variable Facility Fee," was fixed at fifty-eight basis points[5] for the original term of the agreement. *Id.*, App. I at 28.

The $150 million loan commitment provided by the original financing agreement was set to expire in May 2007, but the plaintiffs had the right under the amended agreement to extend it twice: first through April 2009 and again, if they so chose, through April 2014. *Id.* § 1.07. Similarly, the additional loan commitment established through the amended agreement had a termination date of April 2009, but the plaintiffs had the right to extend it through April 2014. *Id.* The parties agree that the plaintiffs extended the original financing period through April 2009 without incident. Compl. ¶ 43; Defs.' Mot. at 4. The plaintiffs then opted to extend the termination dates to April 2014 through a notification transmitted to the defendants in October 2008. Compl. ¶ 49.

---

[5] A basis point is one-hundredth of one percent. BLACK'S LAW DICTIONARY (8th ed. 2004).

On March 4, 2009, fifty-six days before the expiration of both the initial term of the amended agreement and the first extension period of the original agreement, the defendants orally informed the plaintiffs that they "proposed to increase the Variable Facility Fee" applicable during the period from April 2009 to April 2014 from fifty-eight basis points to 200 basis points. *Id.* ¶ 54. The defendants asserted that this modification would apply not only to Variable Advances disbursed during the extension period from April 2009 to April 2014, but also to all Variable Advances that had previously been disbursed to the plaintiffs. *Id.* When the plaintiffs objected that this retroactive rate increase was impermissible under the amended agreement, the defendants indicated that they would review the agreement and then discuss the issue with the plaintiffs. *Id.* ¶ 58. The plaintiffs heard nothing further from the defendants about the proposed rate increase until April 3, 2009, twenty-six days before the expiration of the initial term of the amended agreement, when the defendants again orally advised the plaintiffs that they proposed to increase the Variable Facility Fee to 200 basis points. *Id.* The plaintiffs assert that they received no written notice of this increase until April 17, 2009, twelve days before the expiration of the initial term of the amended agreement. *Id.* ¶ 59.

The plaintiffs contend that given the state of the mortgage financing market in April 2009, they had no choice but to agree to pay the increased Variable Facility Fee to obtain the extension of the amended agreement. *Id.* ¶ 61. To secure the extension, the plaintiffs signed an extension agreement providing for an increase in the Variable Facility Fee, but they did so "under protest." *Id.* ¶ 62. The parties agree that the extension agreement does not prejudice any of the plaintiffs' rights under the amended agreement. *Id.*

The plaintiffs commenced this action in November 2009, seeking reimbursement of the allegedly excessive Variable Facility Fee payments and a declaratory judgment that the fee

increase was not permitted under the amended agreement. *See generally id.* In December 2009, the defendants filed this motion to dismiss the complaint for failure to state a claim for which relief can be granted, arguing that the plaintiffs cannot recover for their claims because the amended agreement unequivocally provided the defendants the right to increase the Variable Facility Fee during the extension period for all Variable Advances. *See generally* Defs.' Mot. With this motion fully briefed, the court turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### B. The Court Denies the Defendants' Motion to Dismiss

The defendants argue that court should dismiss the complaint because the increase in the Variable Facility Fee that prompted the complaint was permissible under the amended

agreement. Defs.' Mot. at 7. In response, the plaintiffs contend that the amended agreement did not permit the defendants to increase the Variable Facility Fee for previously disbursed Variable Advances and, in the alternative, that even if the defendants were entitled to increase the Variable Facility Fee, they failed to provide the thirty-days advance written notice that the amended agreement required as a condition for altering the fee.[6] Pl.'s Opp'n at 10-13. In reply, the defendants argue that they substantially complied with the written notice requirement by providing actual notice, and contend that strict compliance with the notice provision is not required under the amended agreement. Defs.' Reply at 6-7.

### 1. The Disputed Provision is Ambiguous

Under District of Columbia law,[7] the presence of ambiguity in a contract is a question of law. *Wash. Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000) (citing *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983)). "A contract is not ambiguous merely because the parties disagree over its meaning." *Id.* (citing *Bagley v. Found. for Pres. of Historic Georgetown*, 647 A.2d 1110, 1113 (D.C. 1994)). Rather, "a contract is ambiguous when, and only when, it is . . . reasonably or fairly susceptible of different constructions or interpretations." *Id.* (quoting *Holland*, 456 A.2d at 815). If a court determines that a contractual provision is ambiguous, then "its proper interpretation requires consideration of extrinsic evidence" demonstrating the intent of the parties at the time the contract was made. *Mamo v. Skvirsky*, 960 A.2d 595, 599 (D.C. 2008).

---

[6] The plaintiffs also argue that the fee increase was not determined according to the proper criteria and was therefore imposed contrary to the terms of the agreement and additionally that the fee increase is barred by the doctrine of laches. *See* Pls.' Opp'n at 26. Because the court concludes that the motion to dismiss must be denied due to ambiguities in the contract and the defendants' alleged non-compliance with the notice requirement, the court does not reach these other arguments at this point in the proceedings.

[7] The amended agreement contains a choice of law provision which specifies that it is to be governed by District of Columbia law. *See* Amended Agreement § 17.06.

7

The key contractual provision in dispute is the definition of "Variable Facility Fee" found in Appendix I to the amended agreement. *See* Am. Agreement, App. I at 28. The third sub-part of that definition provides that "if the Variable Facility Termination Date is extended . . . for any Variable Advance drawn from any portion of the Variable Commitment . . . after the original Variable Facility Availability Period," then the Variable Facility Fee will be "the number of basis points per annum determined by the lender as the Variable Facility Fee for such period." *Id.* The parties agree that this provision allows the defendants to increase the Variable Facility Fee for Variable Advances drawn after the extension date of the amended agreement. *See* Defs.' Mot. at 8; Pls.' Opp'n at 18-19. They disagree, however, over what it means to "draw" a Variable Advance.

The defendants argue that because of the structure of the agreement, a Variable Advance is "drawn" every time the MBSs which finance the agreement are rolled over, which is at least every nine months. *See* Defs.' Mot. at 9; *see also* Am. Agreement, App. I at 1 (defining "Advance" to include rollover advances); *id.* § 1.04(b) (limiting the term of each Variable Advance to the term of the MBS which financed it). Conversely, the plaintiffs argue that, regardless of the issuance of rollover advances, they cannot be said to "draw" a new Variable Advance when they do not receive any new financing, and that they did not receive any new financing under the amended agreement during the extension period. *See* Pls.' Opp'n at 18.

The word "draw" remains regrettably undefined in the parties' agreement, and, as far as the court can ascertain, appears only in the disputed provision. *See generally* Amended Agreement. The term is, however, ordinarily defined as the act of "tak[ing] out (money) from a bank, treasury, or depository," BLACK'S LAW DICTIONARY (8th Ed. 2004), providing some support for the plaintiffs' interpretation of the agreement, as the plaintiffs allege that they

8

received no new funds pursuant to any Variable Advance during the extension period, Compl. ¶ 56.

Considering the amended agreement's lack of clarity with respect to what it means to "draw" a Variable Advance, together with the ordinary definition of "draw," the court concludes that the amended agreement does not unambiguously give the defendants the power to increase the Variable Facility Fee on Variable Advances disbursed to the plaintiff prior to the April 2009 extension. This conclusion alone requires that the court deny the defendants' motion, because if the agreement is ambiguous then the parties are entitled to support their interpretations with extrinsic evidence of intent. *Mamo*, 960 A.2d at 599.

### 2. The Effect of the Thirty-Day Notice Provision Remains Unclear

The issue of the thirty-day written notice requirement built into the definition of "Variable Facility Fee" also persuades the court to deny the defendant's motion. The amended agreement provides that if the duration of the agreement is extended, the Variable Facility Fee for advances drawn in the period following the extension will be "determined by the lender . . . which fee shall be set by Lender not less than 30 days prior to the commencement of such period." Am. Agreement, App. I at 28. The agreement further provides that "[a]ny approval, designation, determination, selection, action, or decision of Lender or Borrower must be in writing to be effective." *Id.* § 17.17; *see also id.* § 17.08 (specifying methods by which sufficient written notice can be provided). These provisions indicate that the defendants were required to provide the plaintiffs with written notice of any change in the Variable Facility Fee thirty days prior to the commencement of the extension period. Accordingly, even if the court were to conclude that the defendants' interpretation of the agreement were correct, it could not grant the defendants' motion to dismiss unless it were also able to conclude as a matter of law that the

defendants complied with the thirty-day written notice requirement, that the defendants' non-compliance was excused or that the defendants' non-compliance did not prohibit them from increasing the Variable Facility Fee. Accordingly, the court turns to the issue of the defendants' compliance with the written notice requirement.

Although District of Columbia courts have shown some willingness to excuse purely technical deficiencies in notice, *see Mason v. Curro*, 41 A.2d 164, 165 (D.C. 1945) (concluding that a written notice of intent to terminate a lease that contained all required information was sufficient even though it was sent by the purchaser of the property rather than the original lessor as the lease required), the defendants cite no case in which oral notice was accepted in lieu of written notice, and the general rule is to the contrary, *see Flynn v. Beeler Barney Assocs. Masonry Contractors, Inc.*, 2004 WL 3712630, at *4 (D.D.C. Aug. 10, 2004) (holding that a contractual requirement of written notice was not met by oral notice); *see also Hein Enterprises, Ltd. v. S.F. Real Estate Investors*, 720 P.2d 975, 979 (Colo. 1985) (holding that "[w]hen an agreement concerning real estate calls for written notice affecting the rights of the parties, oral notice does not suffice"); 66 C.J.S. *Notice* § 18 (2010) (noting that "where written notice is required, oral notice will not suffice"). Furthermore, there remains some question as to whether the oral notification on which the defendants rely actually put the plaintiffs on notice that the defendants were raising the Variable Facility Fee rather than merely contemplating such a move. *See* Compl. ¶ 54 (alleging that the defendants merely stated that they "proposed to increase the Variable Facility Fee" the only time the issue was discussed before the thirty-day deadline); *id.* ¶ 58 (alleging that when the plaintiffs protested such an increase, the defendants indicated that they would review the agreement and discuss the matter further). Thus, the court cannot conclude at

this stage of the proceedings that the oral notice provided to the plaintiffs satisfied the thirty-day notice requirement.

Likewise, the question remains as to whether the thirty-day notice requirement is a condition precedent to the defendants' power to alter the Variable Facility Fee (such that the defendants' alleged failure to comply resulted in the waiver of their right to alter the Fee), or if it instead merely imposed a duty on the defendants (such that their alleged failure to comply at most entitles the plaintiffs to recover damages for the lack of notice). *See* MURRAY ON CONTRACTS § 99D (describing the effect of construing a notice provision as a condition precedent rather than merely as a promise). Under District of Columbia law, "there is a presumption in favor of construing doubtful language in a contract as language of promise rather than as language of condition." *Wash. Props., Inc.*, 760 A.2d at 549 (*citing N.Y. Bronze Powder Co. v. Benjamin Acquisition Corp.*, 716 A.2d 230, 234 (Md. 1998)). There is, on the other hand, some support for the proposition that notice provisions are generally understood to be conditions precedent to the exercise of power about which notice is being given. *See Russell v. Dep't of Hous. & Urban Dev.*, 836 A.2d 576, 579 (D.C. 2003) (concluding that service of a notice to quit was a condition precedent to an eviction action, so a landlord had no power to evict a tenant when such a notice had not been properly served); *see also United States v. Cunningham*, 125 F.2d 28, 31 (D.C. Cir. 1941) (concluding that a contractual requirement that a party provide written notice of any delay was a condition precedent to that delay being excused).

In any event, "[t]he question of whether a provision in a contract 'constitutes a condition precedent is one of construction dependent on the intent of the parties'" as revealed by the contract itself, and, if necessary, by extrinsic evidence. *Wash. Props., Inc.*, 760 A.2d at 550 (quoting *Canaras v. Lift Truck Servs., Inc.*, 322 A.2d 866, 875 (Md. 1974)). The court cannot

conclude at this stage of the proceedings that it would be unreasonable to interpret the thirty-day notice requirement as a condition precedent to the defendants' power to increase the Variable Facility Fee, particularly in light of the parties' scant briefing on the issue.[8] If the thirty-day notice requirement was a condition precedent to the defendants' power to set the Variable Facility Fee, then the defendants had no authority to increase the Fee unless they strictly complied with the notice requirement. *See id.* (noting that a condition precedent "must occur . . . before performance under a contract becomes due" (quoting RESTATEMENT (SECOND) OF CONTRACTS § 224)); *see also Cunningham*, 125 F.2d at 31 (concluding that oral notice was insufficient to satisfy a condition precedent where the contract required written notice); *but see Omni Specialties-Wash., Inc.*, 1990 WL 69284, at *3 (D.C. Cir. May 25, 1990) (noting the possibility that "exceptional circumstances" might render an express contractual notice provision inapplicable). Furthermore, even if the notice requirement was not an express condition precedent to the defendants' power to set the Variable Facility Fee, the court might be persuaded to construe it as a constructive condition precedent to that power. *See Wash. Props., Inc.*, 760 A.2d at 550 (noting that courts can impose constructive conditions if necessary to do justice).

Thus, even if the court were to accept the defendants' interpretation of the amended agreement, and their authority to increase the Variable Facility Fee, as the only reasonable interpretation, there would remain an open question regarding the effect of the thirty-day notice requirement. Because the court cannot conclude as a matter of law that the plaintiffs' interpretation of the notice provision, under which timely written notice was a condition

---

8   Although the parties discuss the written notice requirement in some detail, they do not squarely address the question of whether the requirement is a condition precedent to the defendants' alleged power to set the Variable Facility Fee. *See generally* Pls.' Opp'n; Defs.' Reply. Indeed, the defendants seem to concede that some measure of compliance with the notice requirement is a condition precedent to their fee-setting power. *See* Defs.' Reply at 7 (arguing that "[p]laintiffs concede receipt of actual notice, and substantial compliance, and under the Agreement and applicable law nothing more is required").

precedent to the defendants' fee-setting power, is not the correct interpretation, and because the court must accept as true the plaintiffs' allegation that the defendants did not comply with the thirty-day notice requirement, the court denies the defendants' motion to dismiss for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss for failure to state a claim for which relief can be granted and denies the plaintiffs' motion for leave to file a sur-reply. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of August, 2010.

RICARDO M. URBINA
United States District Judge